UNITED STATES, Appellant and Cross-Appellee

v

LARRY L. HART, Private, U. S. Army,
Appellee and Cross-Appellant

19 USCMA 438, 42 CMR 40

No. 20,846

May 22, 1970

*Captain Edwin L. Gage* argued the cause for Appellant and Cross-Appellee, United States. With him on the brief were *Colonel David T. Bryant, Major Edwin P. Wasinger,* and *Captain David K. Fromme.*

*Captain Gary L. Hultquist* argued the cause for Appellee and Cross-Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Captain Thomas R. Maher.*

## Opinion of the Court

DARDEN, Judge:

This case is before us after a rehearing. The accused was originally tried by a general court-martial convened by the Commanding General, 25th Infantry Division in Vietnam. On May 10, 1968, this Court reversed his conviction for murder and three charges of aggravated assault because pretrial statements had been received in evidence without the Government's having affirmatively established that Hart had first been warned of his right to counsel before being interrogated. United States v Hart, 17 USCMA 524, 38 CMR 322 (1968). Subsequently, the Judge Advocate General of the Army requested the Commanding General, Fort Leavenworth, Kansas, the officer then exercising general court-martial jurisdiction over the accused, to take appropriate action.[1] A rehearing again resulted in a conviction and, after reduction by the convening authority, a sentence of a dishonorable discharge, total forfeitures, confinement at hard labor for nineteen years and seven months, and reduction in grade. A board of review reversed this finding and sentence, holding that the rehearing was a nullity and that the case should have been returned to the original convening authority for further proceeding in compliance with a mandate of this Court and Article 67(f), Uniform Code of Military Justice, 10 USC § 867. The Judge Advocate General of the Army certified the case for review on the following question:

Was the board of review correct in its determination that failure to transmit the case for rehearing to the convening authority who originally referred the case to trial resulted in jurisdictional error thereby rendering the rehearing proceedings null and void?

The accused cross-petitioned for re-

---

[1] The defense brief shows that the standard Army procedure since early February 1969 is that all general court-martial cases in which a rehearing is authorized are first referred to the original convening authority.

lief, and two issues were added. They are:

 a. Is the decision in United States v Hart, 17 USCMA 524, 38 CMR 322 (1968), *res judicata* on the question of admissibility of Prosecution Exhibit 1?

 b. Whether the law officer erred in admitting in evidence a written pretrial confession of accused (Prosecution Exhibits 1 and 2) and an oral pretrial confession of accused since accused was inadequately advised of his rights to the assistance of a lawyer before he made each of the statements.

The certified question is answered in the negative. In United States v Martin, 19 USCMA 211, █ 41 CMR 211 (1970), a majority of this Court, relying on United States v Robbins, 18 USCMA 86, 39 CMR 86 (1969), and United States v Landrum, 18 USCMA 375, 40 CMR 87 (1969), determined that failure to transmit a case for rehearing to the convening authority that originally referred the case to trial is not jurisdictional in nature and that the rehearing is not null and void.[2]

 Comparing the trial after reference to other than the original convening authority to the constitutional requirement of trial in the district court of the district in which an offense is committed, the *Martin* opinion observed:

 ". . . The accused has the right to trial in a particular court, but he may waive the right. He may waive the right expressly, Hoover v United States, 268 F2d 787 (CA 10th Cir) (1959), or he may waive by failing to object to the trial proceedings. United States v Rivera, 388 F2d 545 (CA 2d Cir) (1968), certiorari denied, 392 US 937, 20 L Ed 2d 1396, 88 S Ct 2308 (1968)."

Defense moved for dismissal of the charges at the rehearing, arguing that the convening authority was "limited to the determination of whether or not the evidence *aliunde* the pretrial confessions was sufficient to warrant a rehearing," and that in ordering a rehearing the convening authority acted on erroneous advice that evidence previously declared inadmissible could be used at the rehearing. No issue was made of the convening authority's power to order a rehearing, however. Implicit in the defense theories above is the recognition that the convening authority did have authority and power to convene the rehearing of this case. What was said in *Martin*, supra, is controlling here.

During their original argument before this Court, appellate counsel for the Government posited that the original record was so incomplete that "it would be premature to assert that the warning was in fact deficient," and that there is a "significant distinction between an insufficient showing and a showing of insufficiency." They contended that a rehearing could establish "with certitude" whether Hart was or was not properly warned.

Consistent with this view, Judge Kilday wrote in *Hart* for a unanimous court:

 ". . . At this level, however, the Government, in a well-reasoned brief, analyzed the cases decided by this Court subsequent to United States v Tempia, supra, and conceded 'that the prosecution *showing* with regard to the right to counsel warning afforded the appellant was insufficient (see especially United States v Groover (17 USCMA 295, 38 CMR 93), supra; United States v Wood (17 USCMA 257, 38 CMR 55), supra; United States v Stanley (17 USCMA 384, 38 CMR 182), supra; also United States v McCauley (17

---

[2] The dissent acknowledges that for good cause this Court in a mandate could direct that the record be sent to other than *the* convening authority. If the requirement for return to *the* convening authority is jurisdictional as the dissent maintains, this leaves unanswered the question of the source of this Court's authority for such a mandate since we have no power to confer jurisdiction.

USCMA 81, 37 CMR 345), supra). Because the Government did not carry its burden to affirmatively establish compliance with *Miranda* and *Tempia,* both *supra,* and the appellant did not consent to the receipt in evidence of the statements, the appellant is entitled to a rehearing.'" [17 USCMA, at page 525.]

He also acknowledged, "Our action in this case is not based on a lack of sufficient evidence in the record to support the findings." (17 USCMA, at page 525.) Giving face value to the language of *Hart,* prosecution at the rehearing again factually developed the warning advice given this accused, since it was evident that this Court had not finally decided the admissibility of Hart's statements as a matter of law. In the absence of this finality, *res judicata* is inapplicable. United States v Smith, 4 USCMA 369, 15 CMR 369 (1954).

The *Smith* case is urged upon us as authority that the admissibility of the confession is barred under the doctrine of *res judicata.* In *Smith* the law officer ruled a confession inadmissible. On a motion for a finding of not guilty, Smith was acquitted. At a later trial on a different charge the Government sought to use the same evidence. A majority of this Court held that the original determination of inadmissibility prevented use of the statement at the second trial. In that case the law officer had made a decision to exclude a determination that must be viewed as final. In *Hart,* however, the decision at the trial was to admit the confession. This Court reversed, but we construe the Court's not dismissing the charges as permitting a rehearing on the issue of the extent of the warning about rights to counsel.

The adequacy of the warning given Hart of his right to counsel under *Miranda* and *Tempia*[3] was first contested in an out-of-court proceeding and later before the members of the court. In each instance, the military judge ruled the warning advice adequate and the statements admissible. Criminal Investigations Detachment agents testified during each proceeding about the taking of the written statement obtained February 1, 1967, and the oral declaration made three days later. The record reflects that Hart was advised before his interrogations—the advice was repeated at the beginning of the second interview—that he could have counsel present at these sessions, that counsel meant a lawyer, that this included counsel of his choice or one appointed for him at no expense to him. His interrogator, however, made no specific reference to "civilian" counsel.

While testifying on this limited issue the accused conceded he had informed the agents that he did not desire counsel. Hart stated that he knew he could have defense counsel and "that if he were a military lawyer there would be no charge to me." We consider this statement an acknowledgment of his awareness that one of his options included his securing a civilian lawyer at his own expense.

Such a warning and response meet the requirements of *Miranda* and *Tempia* relating to the right to counsel. We find no basis for concluding that the confessions introduced in this case were inadmissible as a matter of law. Neither *Miranda* nor *Tempia* mentions the word "civilian" in spelling out necessary lawyer-warning requirements. This Court has said in the past that particular words are not required so long as the substance of the formula is laid out. United States v Mewborn, 17 USCMA 431, 38 CMR 229 (1968). That was done in this case. Accordingly, the decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Army for submission to the Court of Military Review for consideration of the case on the merits.

Chief Judge QUINN concurs.

---

[3] Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966), and United States v Tempia, 16 USCMA 629, 37 CMR 249 (1967).

FERGUSON, Judge (dissenting):

I dissent.

Since I believe that the referral of this case for rehearing to the Commanding General, Fort Leavenworth, Kansas, instead of to the original convening authority, was jurisdictional error, I agree with the holding of the board of review that the proceedings at Fort Leavenworth were null and void. United States v Robbins, 18 USCMA 86, 39 CMR 86 (1969); United States v Landrum, 18 USCMA 375, 40 CMR 87 (1969). See also my separate opinion in United States v Martin, 19 USCMA 211, 41 CMR 211 (1970). I would answer the certified question in the affirmative and thus would not reach the two issues granted on the accused's cross-petition for relief.

While my brothers agree that it was error to refer the decision for retrial to the convening authority at Fort Leavenworth instead of to the original convening authority (United States v Martin, supra), *in derogation of the mandate of this Court* (United States v Robbins, supra), they do not believe the error was jurisdictional in nature and that the accused, by his failure to object to the trial proceedings, waived the issue. United States v Martin, supra. Even were I to accept the view that this was not a jurisdictional error, I could not concur with their view for two reasons. First, this case was retried at Fort Leavenworth prior to the announcement of our decision in *Robbins* and an accused should not be held to have waived, by silence, a right of which he was unaware. Secondly, this case is distinguishable from *Martin* for Martin, unlike this accused, pleaded guilty after having reached an agreement with the convening authority at Fort Leavenworth to reduce the original charges and to approve only a stated sentence, which was considerably less than that which he had previously received.

The central issue here, as in *Robbins*, is the departure by the Judge Advocate

General of the Army from the specific mandate of this Court. But as the Supreme Court stated in Cascade Nat. Gas Corp. v El Paso Nat. Gas Co. 386 US 129, 136, 17 L Ed 2d 814, 87 S Ct 932 (1967):

". . . No one, except this Court, has authority to alter or modify our mandate. United States v du Pont & Co., 366 US 316, 325, 6 L Ed 2d 318, 324, 81 S Ct 1243."

This arrogation of power by the Judge Advocate General of the Army[1] is, in my opinion, reminiscent of an earlier attitude toward military justice procedures as expressed by the Army in the 1960 Report to the Secretary of the Army by The Committee on The Uniform Code of Military Justice Good Order and Discipline in the Army. In commenting on that document in our Annual Report for 1960, this Court expressed itself as being,

". . . appalled by the proposals therein contained. Their adoption would mark a return to the conditions which compelled the enactment of the Uniform Code and the establishment of this Court as a civilian tribunal charged with guaranteeing the enforcement of the Code by courts-martial and appellate tribunals within the military establishment." [Annual Report of the United States Court of Military Appeals and The Judge Advocates General of the Armed Forces and the General Counsel of the Department of the Treasury, Pursuant to the Uniform Code of Military Justice, for the period January 1, 1960, to December 31, 1960.]

The remand procedures, when a rehearing has been directed by this Court or by the board (Court) of (Military) review, are defined by statute. Articles 67(f) and 66(e), Uniform Code of Military Justice, 10 USC §§ 867(f) and 866(e), respectively. Nowhere therein is the Judge Advocate General given any discretion in selecting the conven-

---

[1] I find it significant that of all of the services only the Army has seen fit to attempt to establish this procedure.

See United States v Martin, 19 USCMA 211, 214, footnote 1, 41 CMR 211 (1970).

ing authority who will make the decision as to the practicability of a rehearing. Each section of the Code, referred to above, specifically directs that "The Judge Advocate General shall instruct *the* convening authority to take action in accordance with that decision." (Emphasis supplied.) The obvious intention of Congress, as evidenced in the Hearings on the Code, as to who constitutes *the* convening authority was extensively discussed in *Robbins* and need not be restated. Suffice to say, Congress intended that the convening authority who *originally* referred the case to trial make the decision as to the practicability of a rehearing. United States v Smith, 16 USCMA 274, 36 CMR 430 (1966). This procedure is essentially the general civilian rule that a case should normally be returned for corrective proceedings to the same court which initially tried it, but, *for good cause*, remand can be to a different court. Occidental Petroleum Corporation v Chandler, 303 F2d 55 (CA10th Cir) (1962), certiorari denied, 372 US 915, 9 L Ed 2d 722, 83 S Ct 718 (1963); United States v DuBay, 17 USCMA 147, 37 CMR 411 (1967); United States v White, 10 USCMA 63, 27 CMR 137 (1958). Had Congress intended to repose power of selection in the Judge Advocate General, I believe it would have said so. Statutes cannot be changed by fiat of the Judge Advocate General.

Following our original reversal of this case (United States v Hart, 17 USCMA 524, 38 CMR 322 (1968)), we remanded it to the Judge Advocate General of the Army,

". . . for proceedings not inconsistent with the opinion attached. You, therefore, are hereby advised that such proceedings be had in said case as will cause *the* convening authority to order a rehearing, if such rehearing is practicable. . . ." [Emphasis supplied.]

It can hardly be contended that this Court did not intend that the determination regarding the practicability of

holding a rehearing be made by anyone other than the *original* convening authority. United States v Robbins and United States v Landrum, both supra. Had good cause been present indicating the necessity for a different course of action, we would have said so. United States v Robbins, supra. Cf. United States v Marks, 19 USCMA 389, 41 CMR 389 (1970). The Judge Advocate General, by forwarding the matter to Fort Leavenworth for determination as to a rehearing by the Commanding General of that installation, without first obtaining permission of this Court, clearly deviated from that mandate. My brothers' acquiescence in his action subordinates this Court to the will of the Judge Advocate General of the Army and casts doubt upon our ability to exercise the judicial authority granted by the Congress of the United States. I cannot be a party to such a flagrant usurpation of judicial power.

In footnote 2 my brothers maintain that the error was not jurisdictional and point to this Court's mandates in prior cases where, upon a showing of *good cause*, we have directed that the record be sent for rehearing to one other than the original convening authority. They contend that, "If the requirement for return to *the* convening authority is jurisdictional as the dissent maintains, this leaves unanswered the question of the source of this Court's authority for such a mandate since we have no power to confer jurisdiction."

The short answer to the supposed dilemma is that when *good cause* is found to exist by appellate authorities, the original convening authority is thereafter disqualified by law from ordering a rehearing. Jurisdiction vests in another convening authority not by virtue of the mandate of this Court but by operation of the Uniform Code of Military Justice. See generally Articles 22–29, Code, supra. But where a mandate of this Court directs that the original convening authority may order a rehearing, even he may not deviate from that mandate. United

States v Robbins, supra; United States v Stevens, 10 USCMA 417, 27 CMR 491 (1959).

I would answer the certified question in the affirmative and affirm the decision of the board of review.